## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 15 |
| | ) |
| Saad Investments Finance Company (No.5) Limited | ) Case No. 09-_____ |
| | ) |
| Debtor in a Foreign Proceeding | ) |
| | ) |

## DECLARATION OF NICOLAS PAUL MATTHEWS IN SUPPORT OF CHAPTER 15 PETITION FOR RECOGNITION OF FOREIGN PROCEEDING PURSUANT TO 11 U.S.C. §§ 1504, 1509, 1515, 1517 AND 1520

I, Nicolas Paul Matthews, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury under the laws of the United States of America as follows:

1. I am making this declaration (this "Declaration") in accordance with section 1515(c) of title 11 of the United States Code (the "Bankruptcy Code") and Rules 1007(a)(4) and 1008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). I am over the age of 18, and, if called upon, could competently testify to all matters set forth in this Declaration based upon my own personal knowledge and belief. Except as otherwise indicated, all facts set forth in this Declaration in support of the petition (this "Petition") pursuant to chapter 15 ("Chapter 15") of the Bankruptcy Code are based upon my personal knowledge or discussions had in connection with, and during the course of fulfilling, my duties as a liquidator pursuant to the Appointment Order and the Winding Up Order (each as defined in paragraph 2 below), learned from my review of relevant documents or based upon my opinion based upon my experience and knowledge of the business and assets of Saad Investments Finance Company (No.5) Limited (the "Debtor").

2.     As further discussed below, my colleague, Mr. Geoffrey Eugene Varga, and I (together "we," "us," the "Petitioners" as may be appropriate or required in the context) were appointed joint provisional liquidators of the Debtor pursuant to an order of the Grand Court of the Cayman Islands (the "Cayman Grand Court"), dated September 7, 2009 (the "Appointment Order"). We became joint official liquidators pursuant to the Cayman Grand Court's order dated September 18, 2009 (the "Winding Up Order"). Certified copies of the winding up petition, Appointment Order and Winding Up Order are attached hereto as Exhibits A, B, and C, respectively.

3.     Mr. Varga and I are directors of Kinetic Partners (Cayman) Limited ("Kinetic Partners"), a professional services firm organized pursuant to the laws of the Cayman Islands and with its registered office located at The Harbour Centre, 42 North Church Street, PO Box 10387, Grand Cayman, KY1-1004, Cayman Islands. We are duly authorized to act as foreign representatives of the Debtor and, in our capacities as court-appointed liquidators in the Cayman Proceeding (as defined in paragraph 4 below), are officers of the Cayman Grand Court. Our U.S. counsel is Schulte Roth & Zabel LLP, 919 Third Avenue, New York, New York 10022, and Landis Rath & Cobb LLP, 919 Market Street, Suite 1800, Wilmington, DE 19899 (collectively, "U.S. Counsel").

4.     I respectfully submit this Declaration in support of our petition for recognition by this Court of the proceeding commenced in respect of Debtor in the Cayman Grand Court as Cause No. 390 of 2009 (the "Cayman Proceeding") as a "foreign proceeding" pursuant to sections 1504, 1509, 1515, 1517 and 1520 of the Bankruptcy Code.

5.    I have been advised by counsel of the definitions of "foreign proceeding" and "foreign representative" under section 101(23) and (24), respectively, of the Bankruptcy Code.  I believe that the Cayman Proceeding is a "foreign proceeding," and Mr. Varga and I are each a "foreign representative," as defined therein.  The Cayman Proceeding currently pending before the Cayman Grand Court is the only "foreign proceeding" (as I understand its meaning under the Bankruptcy Code) with respect to the Debtor that is known to me.[1]

## BACKGROUND

### The Debtor and Its Business

6.    The Debtor was organized and incorporated on May 10, 2006 as an exempted company under the laws of the Cayman Islands.  Its registered office is situated at c/o Kinetic Partners (Cayman) Limited, The Harbour Centre, 42 North Church Street, PO Box 10387, Grand Cayman, KY1-1004, Cayman Islands.[2]  Copies of the Debtor's Register of Directors and Officers and its Register of Members, each dated as of February 2, 2009, are reproduced herewith as Exhibits D and E, respectively.

7.    The Debtor has the following outstanding equity: (a) 100 Class A Shares (voting) with par value of one dollar per share and (b) 124,508,062 Class B Shares (non-voting) with a par value of one dollar per share.  The Class A Shares are

---

[1] Although the Initial Cayman Receivership (as defined in paragraph 16 below) was commenced against, among others, the Debtor prior to our appointment, the receivers appointed thereunder were discharged, and the proceedings related thereto were automatically stayed in respect of the Debtor upon the issuance of the Winding Up Order by the Cayman Grand Court.  As such, there is no other "foreign proceeding" (as I understand its meaning under the Bankruptcy Code) pending with respect to the Debtor that is known to me.

[2] Prior to the date of the Appointment Order, the Debtor's registered office was situated at the offices of M&C Corporate Services Limited, Ugland House, South Church Street, PO Box 309, George Town, Grand Cayman, KY1-1104, Grand Cayman Islands.

held by Saad Investments Company Limited ("SICL"), an exempted company organized under the laws of the Cayman Islands. As discussed below, SICL is also subject to various proceedings in the Cayman Islands, including an ongoing winding up and liquidation proceeding.[3]

8.     As the holder of the Class A Shares, SICL historically appointed the board of directors of the Debtor. In addition, SICL also served as the Debtor's investment manager pursuant to an Investment Management Agreement (as defined in footnote 9 below).[4]

9.     The Class B Shares are held by Barclays Bank PLC of 1 Churchill Place, London E14 5HP, United Kingdom ("Barclays").

10.     In connection with the formation of the Debtor, in September 2006 SICL and Barclays entered into an agreement that governs their respective rights as equity holders of the Debtor. Specifically, pursuant to the Debtor's formation documents and other related agreements, (i) SICL received all of the Class A Shares, (ii) Barclays made a series of payments to SICL (the "Barclays Payments"), and (iii) SICL contributed its portfolio of funds to the Debtor as an *in specie* contribution and, in exchange, the Debtor issued the Class B Shares to Barclays (the number of Class B Shares issued to Barclays corresponded to (a) the amount of Barclays Payments made to SICL, plus (b) a premium (the "Premium") (*i.e.*, one Class B Share was issued for each

---

[3] This is the Initial Cayman Receivership from which the Debtor was discharged upon the issuance of the Winding Up Order. *See supra* note 1; *see below* ¶ 17.

[4] We understand that SICL further subcontracted the services provided to the Debtor under the Investment Management Agreement to Saad Financial Services SA ("SFS"), a company incorporated in Switzerland and located in Geneva. Neither SICL nor SFS has provided investment management services (or any other services) to the Debtor since the commencement of the Initial Cayman Receivership in July 2009 (as discussed in paragraph 16 below).

dollar of the Barclays Payments and the Premium)). In addition, Barclays sold an

accreting strike option (the "<u>ASO</u>") to SICL.[5] Pursuant to the ASO, SICL had the

option to purchase Barclays's Class B Shares for an amount equal to the Barclays

Payments plus the Premium.

11.     As a result of the foregoing, Barclays was entitled to be repaid

first out of equity distributions, but SICL was entitled to capture all of the upside on the

Debtor's investments. Effectively, this arrangement enabled SICL to refinance its

portfolio of funds by obtaining capital from Barclays to gain increased leveraged

exposure to the Debtor, and for Barclays to hedge its risks in providing such refinancing

capital to SICL through the acquisition of the Class B Shares, which represent a

preferential equity interest in the Debtor.

12.     To the extent that any value is recovered in the Debtor's estate

exceeding the amount of allowed claims of all creditors, such excess will be paid, first,

to Barclays, as the holders of the Class B Shares and, after the Class B Shares are paid

in full, to SICL, as the holders of the Class A Shares.

13.     The current estimated value of the Debtor's assets is significantly

lower than the nominal value of the Class B Shares.

**<u>Events Leading to the Petition</u>**

14.     I understand that, on or about May 28, 2009, the Saudi Arabian

Monetary Authority ordered a number of Saudi Arabian banks to freeze the accounts of

---

[5] The terms of the ASO are set out in a confirmation, dated 25 September 2006, pursuant to an ISDA Master Agreement entered into between Barclays and SICL on January 3, 1996.

Mr. Maan Al-Sanea ("Mr. Al-Sanea"), who along with family members, I understand to be the ultimate beneficial owner of SICL and a number of its affiliates.

15. On July 15, 2009, amid wide ranging allegations of fraud and misappropriation of funds relating to the activities of Mr. Al-Sanea and his businesses, an entity named Ahmad Algosaibi and Brothers Company ("AHAB") filed a third party complaint against Mr. Al-Sanea and an affiliate, Awal Bank BSC ("Awal Bank"),[6] in the Supreme Court of New York.[7]

16. On July 24, 2009, on the *ex parte* application of AHAB, the Cayman Grand Court appointed receivers (the "Receivers") over, among others, the assets, property, and businesses of Mr. Al-Sanea, SICL, the Debtor, and various other related entities (collectively, the "Al-Sanea Entities"), the majority of which are Cayman Islands entities (the "Initial Cayman Receivership"). The Cayman Grand Court also ordered a worldwide freeze on the assets of the Al-Sanea Entities. AHAB sought the Initial Cayman Receivership and freeze of assets in connection with a writ of summons that it had issued against the Al-Sanea Entities, which writ alleged that certain of them had, among other things, breached their fiduciary duties and misappropriated funds.

17. On July 30, 2009, a group of lenders to SICL (including Barclays), petitioned the Cayman Grand Court for a winding up order in respect of

_____

[6] Awal Bank is in an administration proceeding in Bahrain, which administration proceeding was recognized by the U.S. Bankruptcy Court for the Southern District of New York (Case No. 09-B-15923) as a foreign main proceeding under Chapter 15 pursuant to an Order entered on October 28, 2009 (Docket No. 18).

[7] The AHAB Complaint was a third party complaint filed in the case of MashreqBank PSC v. Ahmed Hamad Al Gosaibi & Brothers Company, Index No. 601650/2009, Supreme Court of the State of New York, County of New York.

SICL.  On August 5, 2009, the Cayman Grand Court granted the lenders' petition on a provisional basis and appointed three individuals from Grant Thornton Specialist Services (Cayman) Ltd and/or one of its affiliates as joint provisional liquidators of SICL (the "SICL Liquidators").  On September 18, 2009, a winding up order was issued by the Cayman Grand Court appointing the SICL Liquidators as official liquidators of SICL.

18.     On August 19, 2009, Barclays petitioned the Cayman Grand Court for a winding up order in respect of the Debtor, commencing the Cayman Proceeding.  On September 7, 2009, the Cayman Grand Court issued the Appointment Order granting Barclays's petition on a provisional basis and appointed Mr. Varga and me as joint provisional liquidators of the Debtor.

19.     On September 18, 2009, the Cayman Grand Court issued the Winding Up Order providing for our appointment as joint official liquidators and the winding up of the Debtor pursuant to Cayman Islands law.

20.     The Winding Up Order authorizes us to, among other things:

a) bring or defend any action or other legal proceeding in the name and on behalf of the Debtor;

b) carry on the business of the Debtor so far as may be necessary for its beneficial winding up;

c) engage attorneys and other professionally qualified persons to assist us in the performance of our functions;

d) take possession of, collect and get in the property of the Debtor and for that purpose to take all such proceedings as we consider necessary; and

e) do all acts and execute, in the name and on behalf of the Debtor, all deeds, receipts, and other documents and for that purpose to use, when necessary, the Debtor's seal.

*See* Winding Up Order, ¶ 3, 4.

21.    In addition, pursuant to Cayman Islands law, we, by virtue of our appointment, have supplanted the Receivers previously appointed over the Debtor in the Initial Cayman Receivership.  We are thus now responsible for all aspects of the Debtor's business.  All decisions relating to management of the Debtor have been, and continue to be, made by us, from and in the Cayman Islands.

22.    Since our provisional appointment on September 7, 2009, and pursuant to the terms of the Appointment Order, the Winding Up Order and Cayman Islands law, we have been managing the Debtor and its assets, including having:

(a) obtained control over the Debtor's funds and transferred such funds to a bank account in the Cayman Islands;

(b) sent notifications of our appointments as provisional and official liquidators to the appropriate representative at each of the Funds (defined below) and each known creditor and equity holder of the Debtor;

(c) responded to capital call requests by the Funds and secured funding to pay some of the capital calls;

(d) filed numerous certificates with the Cayman Grand Court, Registrar of Companies, or Cayman Islands Monetary Authority, as required by statute;

(e) obtained, or being in the process of obtaining electronic versions of substantially all of the Debtor's financial records from SFS (the Debtor's statutory books and records have always been, and remain, in the Cayman Islands);

(f) sent requests for information to the Debtor's directors, SICL, SFS, and the Debtor's former administrative and accounting services provider;

(g) moved the Debtor's registered office in the Cayman Islands to our head office in the Cayman Islands; and

(h) hired counsel to assist in protecting the Debtor's assets located in the United States and other jurisdictions around the world.

**Assets of the Debtor**

23.     We believe, based upon our investigations to date, that the majority, if not the entirety, the assets of the Debtor's estate consist primarily of a portfolio of 57 private equity vehicles and one hedge fund (collectively, the "Funds").

24.     The Funds have a broad range of differing investment strategies and investment focuses investing across the full range of financial and non-financial sectors. The Funds are mainly limited partnerships, although some are limited companies. The Funds are registered in several jurisdictions around the world, although, as indicated on the table below, the Funds registered in the Cayman Islands appear to represent the largest share of the Debtor's assets by value as of June 30, 2009.[8]

| Fund registered in: | Estimated Value as of 6/30/09 | Percentage of the Debtor's total assets by value | Number of Funds |
|---|---|---|---|
| Cayman Islands | $56,445,992 | 38.7% | 16 |
| United States (Delaware) | $41,516,000 | 28.5% | 20 |
| Scotland | $21,226,360 | 14.5% | 6 |
| Jersey | $17,137,538 | 11.7% | 3 |
| Netherland Antilles | $4,909,546 | 3.4% | 3 |
| Guernsey | $2,269,990 | 1.6% | 2 |
| England | $1,476,731 | 1.0% | 7 |
| Isle of Man | $919,905 | 0.6% | 1 |
| **Total** | **$145,902,062** | **100%** | **58** |

25.     We have recently commenced a proof of debt process in the Cayman Proceeding, which process I understand to be analogous to the claims process

---

[8] The partnership agreements governing the Cayman-registered funds all state that they are governed by Cayman law.

in a U.S. bankruptcy case, but have yet to receive any claims. Without admitting any liability on the part of the Debtor and without commenting on the merits of any claims (or the demerit of any not mentioned here), the potential creditors appear to be comprised of (i) entities that provided professional services to the Debtor prior to our appointment; (ii) Funds that may assert claims related to outstanding capital calls; and (iii) certain parties in the New York and Cayman Islands litigation which assert or may asset claims against, among others, the Debtor.

26. To the extent that we recover value in the Debtor's estate exceeding the amount of allowed claims of all creditors, such excess will be paid first to Barclays, as the holders of the Class B Shares and, after the Class B Shares are paid in full, to SICL, as the holders of the Class A Shares.

**Our Management of the Debtor's Business**

27. Since the date of the Appointment Order, and pursuant to our authority under the Appointment Order, the Winding Up Order, and Cayman Companies Law (2009 Revision), we are managing, administering and are responsible for the business of the Debtor and its operations.[9] Currently, the business of the Debtor is mainly comprised of the management, administration and liquidation of its interests in the Funds for the benefit of its stakeholders, all of which activities are being carried out in their entirety by us. As far as I am aware, with the exception of tasks being

---

[9] Prior to our appointment, investment management services were provided to the Debtor by SICL pursuant to an Investment Management Agreement dated as of September 21, 2006 (the "Investment Management Agreement"). In addition, PFPC International Limited ("PFPC"), an entity incorporated under the laws of Ireland, provided administration and accounting services to the Debtor pursuant to an Administration and Accounting Services Agreement dated as of September 25, 2006 (the "Administration Agreement"). Both the Investment Management and Administration Agreement have been terminated.

performed on our instruction and under our direction in other jurisdictions around the world, no activity is being conducted in respect of the management, administration or operation of the Debtor anywhere apart from our activities in the Cayman Islands.[10]

**Reasons for Filing the Chapter 15 Petition**

28.     We have filed the Chapter 15 Petition in an effort to protect the Debtor's U.S. assets from potential seizure or attachment by third parties through legal, equitable, or judicial action.  Specifically, while we do not believe that any of the parties to the litigation with Mr. Al-Sanea have any interest in, or entitlement to, the assets of the Debtor, we believe it is important to obtain the benefit of the automatic stay to allow us the time to liquidate and maximize the value of the Debtor's investments in the Funds without distraction and to protect against the Debtor's assets becoming embroiled in the broad-based litigation efforts surrounding Mr. Al-Sanea.

29.     In addition, pursuant to investment agreements relating to certain of the Funds, the Debtor is, or may in the future be, obligated to contribute additional capital as a result of capital calls by the general partners.  (As of the date hereof, the Debtor has outstanding capital calls with respect to six of the U.S. Funds)  The failure of the Debtor to satisfy these capital calls may result in, among other things, the forfeiture of all or part of the Debtor's interest in a Fund, penalty interest, forced sale, or other acts to eliminate or decrease the value of the Debtor's investment in a Fund.  We believe that it is critical to our efforts to maximize value that we be afforded a breathing period in which we can evaluate the Debtor's investments in each of the U.S. Funds in

---

[10] Moreover, as far as I am aware, following the Initial Cayman Receivership order being signed and served in or around the end of July 2009, the Debtor's board of directors has had no involvement in the affairs of the Debtor.

order to determine, among other things, which capital calls to satisfy/forego and which Funds to sell/hold. Thus, we filed the Petition and seek the application of the automatic stay upon recognition of the Cayman Proceeding.

30.     With respect to the Debtor's assets outside of the Cayman Islands and the United States, we continue to evaluate the need for the commencement of ancillary proceedings in other countries to assist in our efforts to maximize the value of the Debtor's assets in the Cayman Proceeding. Although, we have not commenced any other ancillary proceedings to date, we may do so in the near term.

**Statements and Lists Required Pursuant to Section 1515(c) of the Bankruptcy Code and Rule 1007(a)(4) of the Bankruptcy Rules**

31.     I understand from counsel that the following statement and lists are required to accompany the Petition pursuant to Rule 1007(a)(4) of the Bankruptcy Rules:[11]

a)  Foreign Proceedings with respect to the Debtor. *See* Schedule 1, attached hereto.

b)  Corporate ownership statement containing the information described in Rule 7007.1 of the Bankruptcy Rules. *See* Schedule 2, attached hereto.

---

[11] I understand that Rule 1007(a)(4) of the Bankruptcy Rules provides as follows:

> (4) *Chapter 15 Case.* In addition to the documents required under § 1515 of the Code, a foreign representative filing a petition for recognition under chapter 15 shall file with the petition: (A) a corporate ownership statement containing the information described in Rule 7007.1; and (B) unless the court orders otherwise, a list containing the names and addresses of all persons or bodies authorized the administer foreign proceedings of the debtor, all parties to litigation pending in the United States in which the debtor is a party at the time of filing the petition, and all entities against whom provisional relief is being sought under § 1519 of the Code.

c) List containing the names and addresses of all person or bodies authorized to administer foreign proceedings of the Debtor. *See* Schedule 3, attached hereto.

d) List containing all parties to litigation pending in the United States in which the Debtor is a party at the time of the filing of the petition. *See* Schedule 4, attached hereto.

e) List containing all entities against whom relief is being sought under section 1519 of the Bankruptcy Code. *See* Schedule 5, attached hereto.[12]

## Motion to Seal

32.     In connection with our appointment as joint official liquidators of the Debtor, we have commenced a marketing and sale process with respect to the Debtor's interests in the Funds. As part of this marketing and sale process, we have entered into non-disclosure agreements with a number of interested parties. Among the information provided to potential buyers upon the execution of a non-disclosure agreement is the identity of the Funds. We believe it is important to the sale process that the names of the U.S. Funds (and their respective general partners) not be publicly disclosed at this time as part of the pleadings or notices in this Chapter 15 case because such disclosure may negatively impact our marketing efforts and/or the value of the Debtor's interests in the Funds.

33.     In that regard, concurrently with the filing of the Petition, we are also filing, through counsel, a motion to file under seal (the "Motion to Seal"): (i)

---

[12] For reasons described in greater detail below, Schedule 5 will be filed on a partially redacted basis and will be the subject of a Motion to Seal (as defined below).

certain portions of Schedule 5 attached hereto; (ii) certain portions of the exhibits to the Motion of Foreign Representatives for Interim and Provisional Relief Pursuant to 11 U.S.C. §§ 105(a) and 1519 (the "Motion for Provisional Relief"); (iii) if granted, certain portions of the exhibits to (1) the Orders related to the Motion for Provisional Relief and (2) the Order recognizing the Cayman Proceeding as a foreign proceeding (all such portions being, collectively , the "Commercially Sensitive Information"); and (iv) any Commercially Sensitive Information contained in any affidavits of service. The Commercially Sensitive Information consists of the identities of the U.S. Funds and the general partners of such Funds.[13]

*[Remainder of page intentionally left blank]*

---

[13] In addition, filing the Commercially Sensitive Information under seal will help mitigate the risk of any of the U.S. Funds or their respective general partners asserting that the disclosure of the Debtor's investment in such Fund constitutes a breach of the relevant limited partnership agreement.

I certify pursuant to 28 U.S.C. § 1746 under penalty of perjury under the laws of the United States of America that the foregoing, and the schedules attached hereto, are, to the best of my knowledge, information and belief, true and correct.

Executed on this 5th day of November, 2009 in Grand Cayman, Cayman Islands

_____

Name: Nicolas Paul Matthews
Title: In his capacity as Joint Official Liquidator of Saad Investments Finance Company (No.5) Limited (In Official Liquidation)

**Schedule 1 to the Matthews Declaration**

**Known Foreign Proceedings with Respect to the Debtor**

*In the Matter of Saad Investments Finance Company (No.5) Limited*, Cause No. 390 of 2009 in the Grand Court of the Cayman Islands.

# Schedule 2 to the Matthews Declaration

## Corporate Ownership Statement Containing the Information Described in Rule 7007.1 of the Bankruptcy Rules[14]

Class A Shares: SICL owns 100% of Class A Shares. Saad Securities Company EC (Bahrain) and Awal Bank B.S.C. (Bahrain) each own more than 10% of the outstanding equity of SICL.[15]

Class B Shares: Barclays owns 100% of Class B Shares. Barclays PLC is the only corporate entity owning 10% or more of the outstanding equity interests of Barclays.[16]

---

[14] I understand that Rule 7007.1 of the Bankruptcy Rules provides for a "statement that identifies any corporation, other than a governmental unit, that directly or indirectly owns 10% of more of any class of the corporation's equity interests, or states that there are no such entities to report."

[15] The above information relating to the corporate ownership of SICL is based upon documents filed in the Cayman Proceeding. In addition, I have been informed by U.S. Counsel that, based upon pleadings filed in the Awal Bank Chapter 15 case (*see supra* footnote 6), it appears that the equity holders of Awal Bank are (i) Mr. Al-Sanea, (ii) SICL, and (iii) Saad Trading and Contracting and Financial Services Company. I will supplement this schedule as necessary should additional information become known to me.

[16] This information was conveyed to me by our Cayman counsel, Harney Westwood & Riegels.

**Schedule 3 to the Matthews Declaration**

**List Containing the Names and Addresses of All Persons or Bodies Authorized
to Administer Foreign Proceedings of the Debtor**

Messrs. Nicolas Paul Matthews and Geoffrey Eugene Varga
Kinetic Partners (Cayman) Limited
The Harbour Centre
42 North Church Street, PO Box 10387
Grand Cayman, KY1-1004, Cayman Islands

Grand Court of the Cayman Islands
Judicial Administration
PO Box 495
Grand Cayman, KY1 1106, Cayman Islands

**Schedule 4 to the Matthews Declaration**

**List Containing all Parties to Litigation pending in the United States in which the Debtor is a Party at the Time of the Filing of the Petition**

None.

**Schedule 5 to the Matthews Declaration**

**Names and Addresses of All Entities Against Whom**
**Relief is Being Sought Pursuant to § 1519 of the Bankruptcy Code**

| | |
|---|---|
| 1. | **Saad Investments Company Limited (in Official Liquidation)**<br><br>c/o Grant Thornton Specialist Services (Cayman) Limited<br>Commerce House, 2nd Floor<br>7 Dr. Roy's Drive<br>P.O. Box 1370<br>Grand Cayman, KY1-1108<br>Cayman Islands<br>Attn: Hugh Dickson, Mark Byers and Steve Akers, in their capacity as the Joint Official Liquidators of Saad Investments Finance Company Limited (in Official Liquidation)<br><br>- and -<br><br>c/o Walkers<br>Walker House, 87 Mary Street<br>George Town, Grand Cayman KY1-9001<br>Cayman Islands<br>Attn: Colette Wilkins |
| 2. | **Barclays Bank PLC**<br><br>1 Churchill Place,<br>London E14 5HP,<br>United Kingdom |

| | |
|---|---|
| 3. | **Mr. Maan Abdulwaheed Al Sanea**<br><br>c/o Saad Trading and Contracting Co.<br>P.O. Box 3250<br>Al Khobar, 31952<br>Kingdom of Saudi Arabia<br><br>- and -<br><br>c/o Gibson, Dunn & Crutcher, LLP<br>200 Park Avenue, 47th Floor<br>New York, NY 10116-0193<br>Attn: Robert F. Serio, Esq., Gabriel Herrmann, Esq.<br><br>- and -<br><br>c/o Appleby<br>Clifton House<br>75 Fort Street<br>PO Box 190<br>Grand Cayman KY1-1104<br>Cayman Islands<br>Attn: Jeremy Walton |
| 4. | **Awal Bank BSC**<br><br>Entrance 3, Level 1<br>The Manana Center<br>Government Avenue<br>Kingdom of Bahrain<br><br>- and -<br><br>c/o Charles Russell, LLP (External Administrator of Awal Bank, BSC)<br>5 Fleet Place<br>London EC4M 7RD<br>United Kingdom<br><br>- and -<br><br>c/o Quinn Emanuel Urquhart Oliver & Hedges, LLP<br>51 Madison Avenue, 22nd Floor<br>New York, NY 10010<br>Attn: Daniel L. Brockett, Esq., Christine H. Chung, Esq. |

| | |
|---|---|
| 5. | **Ahmed Hamad Al Gosaibi & Brothers Co.**<br><br>P.O. Box 106<br>Al Khobar 31952<br>Kingdon of Saudi Arabia<br><br>- and -<br><br>c/o Solomon Blum Heymann & Stich, LLP<br>40 Wall Street<br>New York, NY 10005<br>Attn: David P. Stich, Esq.<br><br>- and -<br><br>c/o Baach Robinson & Lewis, PLLC<br>1201 F. Street, NW<br>Suite 500<br>Washington, DC 20004<br>Attn: Bruce R. Grace, Esq., Elizabeth Marvin, Esq., Katherine Toomey, Esq.<br><br>- and -<br><br>c/o Mourant du Feu & Jeune<br>Harbour Centre<br>42 North Church Street, PO Box 1348<br>George Town, Grand Cayman KY1 1108<br>Cayman Islands<br>Attn: Simon Hayden |

| | |
|---|---|
| 6. | **MashreqBank PSC**<br><br>P.O. Box 1250,<br>Near Al Ghurair City, Deira<br>Dubai, United Arab Emirates<br><br>- and -<br><br>50 Broadway, Suite 1500<br>New York, NY 10004<br><br>- and -<br><br>c/o Cleary Gottlieb Steen & Hamilton LLP<br>One Liberty Plaza<br>New York, NY 10006<br>Attn:  David E. Brodsky, Esq., Carmine D. Boccuzzi, Jr., Esq. |
| 7. | Filed Under Seal |
| 8. | Filed Under Seal |
| 9. | Filed Under Seal |
| 10. | Filed Under Seal |
| 11. | Filed Under Seal |
| 12. | Filed Under Seal |
| 13. | Filed Under Seal |
| 14. | Filed Under Seal |
| 15. | Filed Under Seal |
| 16. | Filed Under Seal |
| 17. | Filed Under Seal |
| 18. | Filed Under Seal |
| 19. | Filed Under Seal |
| 20. | Filed Under Seal |
| 21. | Filed Under Seal |
| 22. | Filed Under Seal |
| 23. | Filed Under Seal |
| 24. | Filed Under Seal |
| 25. | Filed Under Seal |
| 26. | Filed Under Seal |