IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 15 |
| | ) |
| SAAD INVESTMENTS FINANCE | ) Case No. 09-13985 (KG) |
| COMPANY (NO. 5) LIMITED, | ) |
| | ) |
| Debtor in a Foreign Proceeding. | ) |

## LIMITED OBJECTION OF LIGHTYEAR FUND II, L.P. TO THE PETITION OF NICOLAS PAUL MATTHEWS AND GEOFFREY EUGENE VARGA FOR RECOGNITION OF FOREIGN PROCEEDING PURSUANT TO 11 U.S.C. §§ 1504, 1509, 1515, 1517 AND 1520

Lightyear Fund II, L.P. (the "Partnership") objects to the Petition of Nicolas Paul Matthews and Geoffrey Eugene Varga ("Petitioners") as purported foreign representatives of the above-captioned Debtor, for recognition of a foreign proceeding under section 1517 of the United States Bankruptcy Code and associated relief under section 1520 of the United States Bankruptcy Code as follows:

### BACKGROUND

1. Debtor Saad Investments Finance Company (No. 5) Limited ("SIFCO") is a limited partner of the Partnership pursuant to the Amended and Restated Agreement of Limited Partnership of Lightyear Fund II, L.P. dated as of September 22, 2005, as amended (the "Partnership Agreement"). The Partnership's term expires on November 4, 2015 but may be extended for two years pursuant to the terms of the Partnership Agreement.

2. Pursuant to the subscription agreements between SIFCO and the Partnership dated September 30, 2006, SIFCO subscribed for an interest in the Partnership with an aggregate capital commitment of $25,000,000, which may be called over time by Lightyear Fund II GP, L.P., as general partner of the Partnership (the "General Partner"), for the purposes set forth in the Partnership Agreement. To date, SIFCO has made capital contributions to the

RLF1 3510242v.1

Partnership of approximately $14,676,977, and has a yet-to-be-called capital commitment of approximately $10,323,023.

3. The Partnership Agreement defines the relationship of the individual partners to each other and to the Partnership, and of the Partnership to the individual partners. When a capital call is made, limited partners generally have 10 calendar days to fund the call. (Partnership Agreement at § 3.03(a)(1)). Should a limited partner fail to fund a capital call within this period, the General Partner is authorized to pursue a comprehensive set of default remedies for the breach of the limited partner's funding obligation, following delivery of written notice to such limited partner and the failure of such limited partner to cure the default within 10 business days thereof. (Partnership Agreement at § 3.05(a)). The default remedies authorized by the Partnership Agreement include the assessment of a 50% reduction in the defaulting limited partner's capital account, forfeiture of all distributions of investment proceeds that would otherwise be made to such defaulting limited partner in excess of its capital contributions (less expenses, deductions, or losses allocated to such limited partner) and a compulsory transfer of the defaulting limited partner's interest for a purchase price of 50% of the aggregate amount of capital contributions made by such limited partner (less prior distributions, expenses, deductions or losses).[1] These remedies are designed to compel the limited partners' performance because any partner's failure to perform could have material adverse consequences to the Partnership and the other limited partners, including potential defaults by the Partnership on third party contracts, impeding the ability of the General Partner to implement the Partnership's investment objectives and interfering with the effective administration of the Partnership's operations.

---

[1] A concise summary of the relevant provisions is attached as Exhibit A to the Kacani Affidavit.

4.      As detailed in the Affidavit of Timothy Kacani (the "Kacani Affidavit") and attached exhibit, filed contemporaneously herewith, such harm to the Partnership is real and immediate. In order to fund two new investments and partnership expenses, the Partnership intends in the next two weeks to make two capital calls and SIFCO's share of these capital calls will aggregate over $2.8 million. (Kacani Affidavit at ¶¶ 4-5). Thereafter, and sometime in the next 30 days, the Partnership expects to make two additional capital calls, to fund an additional investment and to fund management fees for the first quarter of 2010, resulting in an additional aggregate funding obligation by SIFCO of over $3.1 million. (Kacani Affidavit at ¶¶ 6-7). All three investments are subject to the satisfaction of certain customary closing conditions, including regulatory approval. In short, SIFCO will be faced with capital calls in the next 30 days totaling over $5.9 million.[2]

5.      Should SIFCO fail to fund any of the capital calls described above, in order to consummate the Partnership's investments to which it is committed and to fund expenses, the Partnership will be forced either to draw upon its credit line to fund the shortfall or send an "overcall" payment notice to the remaining limited partners to fund such amount. (Partnership Agreement at § 3.05(b)(ii)). To the extent that the Partnership borrows to fund SIFCO's obligations, the Partnership will incur interest expenses to which it otherwise would not have been subject.

6.      By the Petition and requested form of recognition order, SIFCO seeks to preclude the Partnership (and other similarly-situated funds) from exercising the contractually-agreed remedies which exist for the protection of both the Partnership and the other limited partners upon a SIFCO capital call default. Specifically, the Petition requests that this Court

---

[2] The Partnership understands that SIFCO is in the process of attempting to sell its interest in and transferring its obligation under the Partnership on terms agreeable to both SIFCO and the Partnership. Whether SIFCO will consummate this transaction in a timely fashion, or at all, is uncertain.

3

RLF1 3510242v.1

enter an order providing, *inter alia*, that the automatic stay under Section 362 of the Bankruptcy Code applies "with respect to the Debtor and any property of the Debtor that is within the territorial jurisdiction of the United States." (Pet'rs' Proposed Order ¶ 3). The Petition also seeks entry of an order prohibiting "any action relating to an existing or future capital call in respect of any of the Funds in the United States that would (1) diminish the Debtor's interest in such Fund, (2) impose penalty interest, (3) seek to collect any amounts outstanding, (4) seek to force the sale of the Debtor's interest in such Fund, or (5) otherwise adversely affect the Debtor's rights or interests relating to such Fund), except as otherwise expressly authorized in writing." (Pet'rs' Proposed Order ¶ 3(c)).

7. On November 12, 2009, this Court entered a temporary restraining order, granting on a provisional basis the relief described above, (TRO ¶ 1(c)), and scheduling a preliminary injunction hearing for November 18, 2009. (*Id.* ¶ 8). On November 18, 2009, upon a certification of no objection, the Court entered a preliminary injunction substantially continuing the provisional relief of the TRO, (Prelim. Inj. ¶ 1(c)), and providing that the provisional relief provided in the preliminary injunction would terminate upon the entry of an order adjudicating the Petitioners' request for recognition of the Cayman proceeding under Chapter 15 of the Bankruptcy Code. (Prelim. Inj. ¶ 5).

## OBJECTION

8. The Partnership hereby objects to the Petition and the requested form of order on the ground that the stay it seeks to impose is overbroad and unwarranted in the current circumstances. The Partnership Agreement already provides SIFCO sufficient opportunity and ability to protect its interests and relief of the kind sought is not warranted.

4

## ARGUMENT

9.  Upon recognition by a bankruptcy court of a foreign main proceeding, pursuant to section 1517 of the Bankruptcy Code, the automatic stay of section 362 automatically applies "with respect to the debtor and the property of the debtor that is within the territorial jurisdiction of the United States." 11 U.S.C. § 1520(a)(1). "By importing both sections 361 and 362, section 1520(a)(1) also imports the protections for creditors and limitations on the reach of the automatic stay that are set out in those sections. . . . Thus, creditors who are affected by the court's recognition of a main proceeding have the right . . . to seek relief from the stay in the same manner as would be done in an ordinary bankruptcy case." Hon. Leif M. Clark, *Ancillary and Other Cross-Border Insolvency Cases Under Chapter 15 of the Bankruptcy Code* § 7[1] at 64 (Collier Monograph 2008) (*citing* H.R. Rep. No. 109-31, 109th Cong., 1st Sess. 114 (2005), *reprinted in* Vol. E-2 of *Collier on Bankruptcy*, App. Pt. 10(b) (15th ed. Revised)).

10.  Section 362(d)(1) of the Bankruptcy Code permits a creditor to obtain relief from the automatic stay "for cause." "Section 362(d)(1) does not define 'cause,' leaving courts to consider what constitutes cause based on the totality of the circumstances in each particular case." *In re Wilson*, 116 F.3d 87, 90 (3d Cir. 1997) (*citing Trident Assocs. v. Metropolitan Life Ins. Co. (In re Trident Assocs.)*, 52 F.3d 127 (6th Cir.1995)). "'Cause' is an intentionally broad and flexible concept that permits the Bankruptcy Court, as a court of equity, to respond to inherently fact-sensitive situations." *In re Tex. State Optical, Inc.*, 188 B.R. 552, 556 (E.D. Tex. 1995) (*citing In re Sentry Park, Ltd.*, 87 B.R. 427, 430 (Bankr.W.D.Tex.1988)). "Factors generally looked to in determining whether to modify the stay for cause include interference with the bankruptcy, good or bad faith of the debtor, injury to the debtor and other creditors if the stay is modified, injury to the movant if the stay is not modified, and *the proportionality of the harms from modifying or continuing the stay*. The decision of whether to

5

lift the stay for cause under section 362(d)(1) is committed to the sound discretion of the bankruptcy court . . . ." *In re Milne*, 185 B.R. 280, 283 (N.D. Ill. 1995) (emphasis added, internal citations omitted); *see also* 3 Lawrence P. King et al., *Collier on Bankruptcy* ¶ 362.07[f] (15th ed. revised 2008) ("[A]s a court of equity, the bankruptcy court will be required to consider the impact of the stay on the parties and to consider the 'balance of hurt' in fashioning relief.").

11.  As detailed above, the Partnership expects to make four capital calls on SIFCO over the next 30 days. For each of these capital calls, SIFCO will have a minimum of 22 days[3] to decide whether funding the capital contribution is in SIFCO's best interests, in order to preserve the value of its limited partnership interest, or rather to default. SIFCO will thus have ample opportunity to protect its own interests.

12.  Under the Proposed Order's strictures, the same cannot be said for the Partnership. The Proposed Order restricts the General Partner's exercise of remedies in the event of a SIFCO default and thus effectively converts the Partnership Agreement into an option agreement that benefits SIFCO at the expense of the Partnership and the other limited partners. This treatment poses an undue hardship to the Partnership and the limited partners thereof, all of whom would generally lack adequate protection of their interests in the event that SIFCO fails to meet a capital call obligation. *See* 11 U.S.C. § 362(d)(1).

13.  When faced with a substantially similar situation, the bankruptcy court in *In re Catron* held that it was appropriate to lift the automatic stay to the extent necessary to allow a partnership to exercise the default remedies available to it under a partnership agreement, where the debtor partner defaulted on partnership capital calls. 158 B.R. 624, 629 (Bankr. E.D. Va. 1992) [hereinafter *Catron I*], *aff'd* 158 B.R. 629 (E.D. Va. 1993), *aff'd* 25 F.3d 1038 (4th

---

[3] The initial 10 calendar day capital call period plus the 10 business day cure period. Note that the shortest possible 10 business day period is 12 calendar days.

Cir. 1994). The *Catron* court stated "that by shifting his share of contribution in effect onto his partners, the debtor has improved his position at their expense." *Catron I*, 158 B.R. at 629. The *Catron* court continued, "[t]he mantle of bankruptcy shall not be used to cloak the debtor so completely as to shelter those interests which the debtor has no legal right to retain." *Id.*

14. For similar reasons, the application of the automatic stay as urged by the Petitioners' Proposed Order would create a perverse incentive for SIFCO to default because by defaulting it would be *better off than if it performed its obligations in timely fashion*. SIFCO would be able to hold back its capital contributions, without having the threat of a remedy against it that might induce it to decide to perform.

15. Thus, the equities favor modifying the Proposed Order to the extent necessary to permit the Partnership to exercise the contractual remedies available to it in the event of a default by the Debtor of its funding obligations, in order to permit the Partnership to mitigate the damages to it and its limited partners arising from such default. It is crucial that the Court modify the Proposed Order to permit the Partnership, upon a SIFCO default and failure to cure, to foreclose SIFCO from participation in that investment to which such capital call relates without seeking further relief from the Court. This would help to minimize the harm to the Partnership resulting from any borrowing that may otherwise be employed to cover SIFCO's default, and prevent the free-riding problem described in paragraph 14 above.

16. Additionally, any order granting recognition of the Cayman proceedings should make clear that the Partnership is not stayed with respect to the following provisions of the Partnership Agreement: (i) the right to set-off future distributions to SIFCO against any defaulted capital calls, (Partnership Agreement at § 3.05(c)), (ii) the right to enforce remedies were SIFCO to default on any capital calls for management fees, partnership expenses and

7

repayment of indebtedness, (Partnership Agreement at § 3.03(a)(i)(B), (D), & (E)), (iii) the obligation of each limited partner to obtain the prior consent of the General Partner with respect to any proposed assignment of its limited partnership interests, (Partnership Agreement at § 8.01(a)), and (iv) the right of the General Partner to exercise its right of first refusal with respect to any such proposed assignment to a non-affiliated third party. (Partnership Agreement at § 8.01(b)). Without the two latter important restrictions on transfer, the Partnership and the limited partners can have no assurance that any such assignee will have the financial wherewithal to perform under the funding obligations of the Partnership Agreement or would not create a legal issue for the Partnership.

17. Finally, the Partnership requests that any order entered by the Court provide that the Partnership be permitted to seek further relief from the Proposed Order upon not less than five (5) days notice. This would, to the extent the Court is not otherwise inclined to grant the full relief requested herein, somewhat minimize the resulting prejudice to the Partnership and the limited partners.

## CONCLUSION

18. Accordingly, the Partnership respectfully requests that the Court enter a recognition order modified as proposed herein, and such other relief as it deems just and proper.

Dated: November 30, 2009
      Wilmington, Delaware

Respectfully submitted,

*/s/ Mark D. Collins*

Mark D. Collins (No. 2981)
Lee E. Kaufman (No. 4877)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

-and-

Kenneth S. Ziman
Mary Beth Forshaw
Scott M. Litvinoff
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York NY 10017
Telephone: (212) 455-2000
Facsimile: (212) 455-2502

*Co-Counsel for Lightyear Fund II, L.P.*